May it please the court, I'm Karen Landau and I represent Tyrome Lewis. So the question for this, oh and I will try to save two minutes for rebuttal. The principal question for this court is whether the district court abused its discretion in refusing to substitute counsel. The main question in that regard is that there was a complete breakdown of the relationship between counsel and the defendant. And this is a factor that the court really gave no weight to that particular factor. That is, now the court inquired but during the inquiry and this is, it's in the excerpts and in the brief. The court inquired you know and said you know why do you want to, and repeatedly both counsel and the defendant said we can't work together you know. Well that isn't exactly what they said. They said we were having a fundamental disagreement about presenting a defense. And but I want to direct you to something different before you get back to the merits of the claim. I'm looking at the procedural history of this case. Your client sends the court a letter that says basically you know I can't communicate with my lawyer. Well he says he's not communicating with me. Okay. Exactly. Whatever it says. Yeah. Let's assume that's the functional equivalent of a motion to substitute counsel. The court engages in inquiries. It has two hearings. It asks what the dispute's about. It brings in somebody else, second counsel I can call him, to talk to your client. And then at this third hearing, second counsel says your honor I think we've arrived at an acceptable arrangement. The arrangement is that I'll deal all the portions of the case to deal with Mr. Lewis. Original counsel will remain on to deal with other portions of the case. And the court says Mr. Lewis talk to second counsel. Have a private conference with him. Discuss that. Comes back and the second counsel says yes, he's agreeable to that arrangement. And Mr. Lewis says I agree. I agree. Why isn't that for all intents and purposes a withdrawal of the motion? There's two reasons. First of all, just as a factual matter, at that point the court had twice denied inquiry. No, the court had never denied. The court had said I'm not going to address this until you guys have a chance to talk about it further. I might even bring in somebody to mediate about this. But the court had never said denied. But it was an effective denial because he kept telling the defendant go back, go back. And the other point is that this is the Sixth Amendment. We don't infer a Sixth Amendment waiver from. What did he waive? Well, I think you're saying, I think you're asking what he waived. You can drop a motion. See, I think he waived the motion that he filed. I don't think he ever would. I mean, I'm not sure we're being asked here to infer a waiver of Sixth Amendment rights. He got two lawyers rather than one. What we're being asked to do is figure out whether he said to the district judge, okay, I'm okay with this now. We can go on. I'm trying to figure out what the judge should have done under that situation. Well, I think that that is clear. I think that, you know, I think and I think, you know, I mean, and this is as an aside, I think part of this is was complicated by COVID and the fact that these hearings were conducted by video. So, you know, that that is a good reason for the judge not to grant or deny. Well, it's also a good reason for the judge to be more careful. And the judge wasn't careful when he when when when they came up with this, this proposal. The judge never said that. The judge didn't ask the defendant if because here's the point. At that point, he still was not working with Mr. Nicolais, and they still couldn't communicate. Nothing had changed in that regard. Oh, it's in the record because nothing had ever changed. Well, no, no, no, no, no. Stop, stop. He initially came to court and said, I can't communicate with Mr. Nicolais. Mr. Nicolais said, oh, we had long communications. The problem is I won't agree with him about the defense. And then I can't find anything in the record after that where your client says, I still can't communicate with this guy. Is there something? I think I think I think it's never resolved. And I think I asked, is there something in the record after that initial one where he comes back to the court and says, Judge? Yes. I still can't talk to this. Yes. At the second hearing on May 21st. What does he say? He says, for example, he says, he says, let me pull this up. So 160, 160 ER 3, 3 ER 164, the court tells him to go back and talk to him. And he said, I don't want to talk to him anymore. I'm just done. And the and Mr. Nicolais, and I think that is important to note that this is not a case where defense counsel, defense counsel concurred. Defense counsel said, you know, look, I've tried. I've tried my best. We just don't work together. And and I think in that and I think that is really important because especially well, this is a defense attorney who's been on the panel for probably 40 years. And he's he represents the court. He said, I don't move to withdraw. He said, but in this case, I am. We don't have a professional relationship. And I also think and I would just add this in. One of the problems for for Mr. Lewis is that he was polite. There are defendants who will get up there and they will scream at the judge. They will say, I hate him. I won't talk to him. Some of them will say things that are not true. Some of them, you know, and this client said, I don't want to bad mouth him. I think he's fine for someone else, but we can't work together. That is, so I say, you know, in a way, this defendant was penalized for being a relatively self-controlled individual. We don't know. We don't know whether you're not claiming actual prejudice. In other words, you're claiming. It's if it's if he was if he had to go to trial with somebody that he couldn't. No, you know, you're not. If you're going to prevail on this, you're going to prevail because we infer prejudice from. But you're not claiming it may be on this record that your client got much better representation than he would have with second counsel alone, because first counsel had prepared other parts of the cases and was ready to address. We can't know that. That's right. So so. But the point is, I'm still stuck with. You think the judge should have granted the motion even before this arrangement? I do. I do. I think that if the judge wanted to. I mean, because essentially what. Yes. Yes, I do. I mean, I guess that's the cleanest answer is yes. I think you should have granted it on May 21st, 2020, because at that point we've had we had a letter. We had an initial hearing and it's not good. And then he says, go back and try it. Go back and try. It's still it's not a working relationship. The client doesn't want to talk to the lawyer. The lawyer is, you know, willing to do his best, but also says, look, this isn't working. You know, and this is not a defendant who had gone through. You know, sometimes you have the defendant who goes through many lawyers and he is he's not hasn't gone through any. No one has been relieved. There's no indication that he's a difficult client who will refuse to work. And we all know there are clients like that who will, you know, who will refuse to work with anybody. That's not the situation. I had one other factual question. I want you to be careful in answering it because I don't want to disclose anything in the sealed record. I can't find what the defense was that they were quarreling about. Is that somewhere in the record? It's not really. OK, that's all it is. Yeah, it's not. I mean, I think we could infer, but it's not. I'll save my time. The defense that counsel was not willing to pursue. Yeah, I think. That was pretty clear. Yes, and I also think it was just, I think, you know. And maybe ethically. But I think it was more than that. I also think he really believed that he should plead. And that was the, you know, he and the client didn't want to plead. And that's his decision. Good morning. May it please the Court. I'm Peter Dahlquist. I'm appearing on behalf of the United States. Are you familiar with CEHA from the side of your office? Yes, Your Honor. It seems to me that footnote that we have in that opinion is on point. It's very similar factually, probably worse for the government in some ways. Tell me why on the waiver point we shouldn't follow CEHA here. Do you know the case I'm talking about? Yes, Your Honor. But I believe in CEHA wasn't the outcome that they affirmed the conviction. But found no waiver. I'm just focusing specifically on the waiver issue. The waiver of counsel or the waiver of jury trial? I'm sorry. I'm being too cryptic. The thing that troubles me the most here, I actually think you lose on the merits. If we get to the merits, I'll just be upfront about that. I think it was definitely an abuse of discretion not to grant him a new lawyer at the end of the second hearing. However, as Judge Hurwitz pointed out, at the third hearing, after he had a chance to consult with, was it Mr. Chambers? Yes, Your Honor. Was that the special lawyer? Came up with this alternative arrangement. The judge did ask, are you okay with basically continuing on with Mr. Nicolias in one role and Mr. Chambers in another? Mr. Lewis says, yes, I'm okay with that. Obviously, you're arguing that at that point basically he's not even entitled to have us consider at that point the merits of the request for new counsel. I'm saying CEHA seems to me to cut directly against that proposition. I just want to give you a chance to talk me out of relying on CEHA for that point. I guess I am familiar with CEHA. It was a case with Judge Klausner in the Central District. It raised the same two issues, but I guess I'm not clear on exactly what the waiver. Oh, sure. There's a footnote, footnote one, I think it is, in which your office made the exact same argument you're making here because there the defendant filed an initial motion for new counsel. It was denied, filed a second motion, which was then potentially pending, and the defendant explicitly withdrew the motion, was asked by the court, are you sure you don't want me to consider further appointing new counsel, and the defendant said explicitly, no, Your Honor, I'm okay going forward basically with the lawyer I have. Then got convicted, tried to argue on appeal, did argue on appeal that the request should have been granted. Your office argued waiver, and we said no. In this context, because a constitutional right is at issue, a much more robust, I think, inquiry from the district court is required in order for us to find that the defendant has waived his right to request new counsel. So it seems to me that analysis, albeit in a footnote, is pretty similar to what we've got here. So since you're not familiar with SAIA, let me lay it out for you and see if it helps in your response. As Judge Watford indicates, SAIA made a motion for new counsel, and the court denied it, and then he brought a second motion and withdrew it. So the issue in that case was whether withdrawal of the second motion was a waiver of the rights asserted in the first motion. Slightly different context. Does it make a difference? Oh, yes, Your Honor, I think it does, and I think, yeah, and I do think that the waiver in this particular case is a little bit stronger based on the history. But now I want to return to what SAIA makes a ruling, but it also says something. We shouldn't presume waiver in the absence of better evidence. So why shouldn't a judge have said to Mr. Lewis in this case, well, I just want to make sure. I know you agree with this, but I treated your letter as a motion. Are you sure now you don't want to pursue that anymore? In other words, he just asked him whether he agreed with the arrangement. Right, and I don't think that it was an abuse of discretion for the district court to do it the way that it did, where it held the hearings, and then in that second hearing, or in that third hearing, I'm sorry, in the June hearing, where the district court was prepared to rule on the motion for new counsel. The district court said in the previous hearing, said, hey, you guys take your break, discuss this, and I will contemplate the information that I've received today, and I will rule on the motion. He said, I will make a final determination on the request at this next hearing. That's at ER 216. He said at which hearing did he say that? That was in the May hearing. He said, I will make a final determination on the request at this next hearing. At the next hearing. Which would have been the June 4 hearing. Yes. So he said, I think, at the second hearing, in contemplation of making an order at the third hearing. Yes, Your Honor. I will rule on this motion in this next hearing. And so the next hearing comes, and that's when the district court doesn't get the opportunity to rule because the defense team comes up with this other proposal. It says, Your Honor, we've reached an agreement. We've come to a conclusion. We've made a solution. And then the district court perhaps could have engaged in the colloquy that Your Honor suggests, but instead what the district court did was he asked the defendant to meet with Mr. Chambers, with whom the defendant had a good relationship, and to discuss it with Mr. Chambers. And I'm familiar with the record. So, what if the district court at the end of all this, after Mr. Lewis said he agreed, said, okay, then I'm going to deny the motion for new counsel. How would we review that denial? Would we look at the merits, as Judge Watford suggested, are difficult? Or would we say, no, because you waived it. That's what I'm having some difficulty with. Well, I guess if he'd waived it, then you wouldn't reach it. But I guess if he had waived it, then, you know, if the court basically in an abundance of caution denies the request on top of, you know, granting the defense request for a second counsel, then I think it would have been a waiver as well. And so you wouldn't necessarily need to reach it and rule on it. You could just. That's what you've argued. You've argued that we shouldn't reach it. That's right. And I think that's a good argument. I understand why you've made it. I guess I haven't heard why you think SEHA is distinguishable, notwithstanding the slight distinction that Judge Hurwitz outlined. What's your position on why SEHA doesn't control here? Yeah, I agree with Judge Hurwitz that it's a slightly different, you know, procedurally it's different where the previous request was denied and then the second one was withdrawn. And this one, and I think it's an important distinction that the judge said, I will rule on your request. And that's when the defendant said, or the defense team basically said, we don't need you to rule on it. Essentially, the judge says, hey, show up on June 4th. That's when I'm going to rule on your request. They show up on June 4th. The defense team says, Your Honor, we've come to an agreement. We have a solution we'd like to propose. The judge says, talk about it with Mr. Lewis and get back to me. And then Mr. Lewis says, yes, I agree, Your Honor. And so, for me, that's different than the facts of SEHA where the defendant had the request denied and then made a subsequent request which was withdrawn without being considered or litigated. Yeah, and the defendant, though, just like our defendant here, said, no, no, Your Honor, I'm fine continuing on with the present arrangement. It seems to me that's identical to what happened here. The defendant is basically saying, forget what I said before. I know I hated this lawyer and I wanted to get rid of him for the love of God. Give me a new lawyer. I'm done with that. I'm perfectly happy going forward with the lawyer I have. And that's what our defendant here said according to you. Yeah, well, I think the really important distinction, Your Honor, is that it was not status quo. It was not continuing with status quo. He was appointed a second attorney. And the other thing is with this case, the issue, the dispute, was a dispute about basically ethical legal advice. We haven't got into it and it's shielded from my view, but Mr. Chambers did tell the court that changing the lawyer is not going to change this conflict. He said it to the court twice during that May hearing. And so, in this case, it wasn't a status quo. It was basically the defendant had an opportunity to get a second opinion from another very experienced defense attorney who assessed the conflict and his take was, you know what, I would basically give him the same advice. And if you do appoint me, then the defendant will be back here complaining about my representation. That's what Mr. Chambers represented to the court. Counsel, would you respond to opposing counsel's point that it was a complete breakdown as opposed to a dispute over strategy? Yes, Your Honor. I don't think that the record shows that it was a complete breakdown, especially in light of the communication that Mr. Chambers was able to engage in with Mr. Lewis. I mean, it was clear based on the record that they had a good dialogue. And I think this goes directly to Judge Watford's point about how this is different than Zaha is that it was not a continuation of the status quo. It was bringing in this second counsel, basically having a second opinion on how to deal with this thorny ethical issue. And the breakdown dealt with how to present the defense, how to deal with what, for the defense attorneys, was an ethically challenging issue. And so to have these two attorneys, to have the dual representation, to have basically two consistent opinions on how to deal with this ethical issue is what makes this different and is indistinguishable from Zaha on that waiver issue, Your Honor. And the United States requests that the convictions be affirmed. I see that I'm out of time. Pending any other questions from the court. No further questions. Thank you very much for your argument. Let's put two minutes on the clock for rebuttal. So just a couple of things. So I'm embarrassed that I did not notice that footnote in Zaha. And I do think it's controlling. And also it's consistent with the cases that I cited in my reply brief about the kind of waiver that you require. Now that we've all read it. Yeah, sorry. Let me ask you the question. It does strike me it's one thing to say, I'm inferring from your withdrawal of a second motion that you've given up the argument. It's another thing to say you had an opportunity to confer privately with counsel to see whether you agree with this arrangement and you say you do. Doesn't that give us some more evidence than there was in Zaha that Mr. Lewis actually knew what he was doing and agreed to this? I don't think so because first of all, and this sort of plays into the other point I was going to make, is the court never said I'm going to rule on it on June 4th. It says I'm going to set it for a continued, I'm going to set a status conference at this time for June 4th, not just the status but a continued hearing on the issue as to whether new counsel should be appointed. So I think you have a situation where we've now, so the motion was filed in February. Now we're four months later. There's still no new lawyer. The court has continually expressed a lot of concern about CJA funds and the amount of work that Mr. Nicoliason has done. And I think that a reasonable defendant and a reasonable defense attorney advising that defendant would say, you know, I don't know that you're going to get a new lawyer. This might be the best you can do. Of course, we don't know what Mr. Chambers told them. Well, and the other thing is just I think that I'd like to correct the record about what Mr. Chambers did say to the court. He agreed the case should be settled and he also said that he didn't say that a new attorney would create the same problem. He said that he should be allowed to start over with a new attorney and that would solve the problem because when you start from scratch. He did. I thought he said just the contrary. He said this is going to be a problem no matter who the attorney is because of the nature of what he wants to do. I don't think that's correct. I think he said that Mr. Chambers saw the problem a lot as a disagreement over whether the defendant should testify, and he felt that that was something that, you know, could be resolved. And Mr. Nicolaisen agreed it was obviously the defendant's decision as to whether he should testify. And I'm trying to pull up my notes here, my little cheat sheet. But I think he says he does say at one point, and this may have been on I suspect it was on May 21st because that would have been hearing, is that he should be allowed to start over with someone new. No, he did say that. Yeah. But he also said I think we're going to have the same problem no matter who the attorney is. Well, you know, that's, yeah. I think that, though, doesn't really go to the question whether there's a breakdown between Nicolaisen and Mr. Lewis. I see I'm out of time, so I'm willing to submit unless the court has further questions. And, again, I would, of course, argue that it should be reversed. Thank you. Okay. Thank you very much. The case just argued is submitted.
judges: O'SCANNLAIN, WATFORD, HURWITZ